## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GEGEORGE LIMBERT, as sole trustee of THE KALLIOPI LEOUSSI BOURODIMOS OHIO LEGACY TRUST, <br><br> Plaintiff, <br><br> v. <br><br> MATTHEW WILLIAMSON, THE ARISTOTELIS GROUP, LLC, a foreign Limited Liability Company, and AMERICAN PRIVATE EQUITY GROUP, LLC, a foreign Limited Liability Company, <br><br> Defendants. | Case No. <br> Hon. <br><br><br> JURY DEMAND |

## COMPLAINT

Plaintiff, GEORGE LIMBERT, as sole trustee of THE KALLIOPI LEOUSSI-BOURODIMOS OHIO LEGACY TRUST ("Mr. Limbert"), by his attorneys, LEWIS BRISBOIS BISGAARD & SMITH LLP, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 3, for his Complaint against Defendants, MATTHEW WILLIAMSON, THE ARISTOTELIS GROUP, LLC, a foreign Limited Liability Company ("Aristotelis"), and AMERICAN PRIVATE EQUITY GROUP, LLC, a foreign Limited Liability Company, ("APEG"), states as follows:

## NATURE OF THE CASE

1.  This action arises from a multi-pronged fraud in which Kalliopi Leoussi-Bourodimos was duped into investing in a fictitious property acquisition project in Chicago, Illinois controlled by Chicago Suburban Apartment Property 2013-1 ("CSAP"), a Limited Liability Company purportedly formed by Aristotelis and in which Ms. Leoussi-Bourodimos tendered a $500,000.00 membership interest.

2. Neither CSAP nor the property acquisition project existed at any time relevant to this action.

3. To convince Ms. Leoussi-Bourodimos and other potential investors otherwise, Defendant Williamson, the project's promoter, using the alias Stamatios Sevaslidis, engaged in a multi-pronged fraud whereby he induced Ms. Leoussi-Bourodimos to execute a contract known as the Subscription Agreement for Chicago Suburban Apartment Property 2013-1 ("Subscription Agreement"). *See* Subscription Agreement, attached as **Exhibit A**. In exchange for the $500,000.00 membership agreement, Ms. Leoussi-Bourodimos was to receive an undisclosed percentage interest in CSAP. **Ex. A** at ¶ 1.

4. Notwithstanding Ms. Leoussi-Bourodimos tendering the $500,000.00, the project never commenced and Ms. Leoussi-Bourodimos never received a percentage interest in CSAP.

5. Even after confronted with his failure to fulfill his obligations under the Subscription Agreement, Defendant Williamson, individually and on behalf of and as an employee of both Aristotelis and APEG, continues attempting to solicit additional investment monies from both Ms. Leoussi-Bourodimos and Mr. Limbert.

## PARTIES

6. Plaintiff George Limbert is a citizen of the United States residing in Ohio. At all relevant times, Plaintiff was the sole trustee of The Kalliopi Leoussi Bourodimos Ohio Legacy Trust ("the Trust").

7. Ms. Leoussi-Bourodimos resides in and is a citizen of Greece. Ms. Leoussi-Bourodimos's activities with respect to CSAP were undertaken on behalf of herself and as Settlor of the Trust. On October 23, 2017, Ms. Leoussi-Bourodimos assigned all of her rights

arising from the agreement with Defendant to the Trust. Accordingly, all of Ms. Leoussi-Bourodimos's claims against Defendants are properly assigned to Plaintiff.

8. Defendant Matthew Williamson is a citizen of the United States residing in Illinois. He is purportedly the Senior Principal of APEG. Defendant also uses the alias Stamatios Sevaslidis, Partner at Aristotelis.

9. Defendant The Aristotelis Group, LLC is a foreign Limited Liability Company doing business in Illinois at 2135 City Gate Lane, Suite 300 Naperville, Illinois 60563 and in which Defendant Matthew Williamson claims to be a Partner under the name Stamatios Sevaslidis.

10. Defendant American Private Equity Group, LLC is a foreign Limited Liability Company doing business in Illinois at 2135 City Gate Lane, Suite 300 Naperville, Illinois 60563 and in which Defendant Matthew Williams claims to be a Senior Principal.

## JURISDICTION AND VENUE

11. This Court has personal jurisdiction over Defendants because the acts alleged occurred, in whole or in part, within the Court's District.

12. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

13. This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and the Parties are citizens of different states/territories.

14. This Court has supplemental jurisdiction over Plaintiff's state-based claims pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's federal claims that they

form part of the same case or controversy under Article III of the United States Constitution ("U.S. Const.").

15. Venue is properly placed in this District, pursuant to 28 U.S.C. § 1391(b), because the facts and events giving rise to Plaintiff's claims occurred in this District.

**SUBSTANTIVE ALLEGATIONS**

16. On February 20, 2013, Ms. Leoussi-Bourodimos executed the Subscription Agreement. On or about that date, she tendered her $500,000.00 membership interest. CSAP was to acquire "a property in the Chicago, Illinois area" that is not described except for a brief header noting "Acquisition of one Chicago-area Multifamily (Apartment) Property." **Ex. A** at ¶ 1.

17. The project described in the Subscription Agreement never commenced and Ms. Leoussi-Bourodimos never received a percentage interest in CSAP.

18. Instead, Defendant Williamson converted the funds for his personal use and never carried out his obligations under the Subscription Agreement.

19. CSAP is recognized on neither the Illinois Secretary of State website nor the Delaware Secretary of State website. However, the Subscription agreement identifies CSAP as "existing and in good standing under the laws of the state of its organization." **Ex. A** at ¶ 5(a).

20. Matthew Williamson is not recognized on the Financial Industry Regulatory Authority ("FINRA") website broker check as associated with either APEG or Aristotelis.

21. Stamatios Sevaslidis is not recognized on the FINRA website broker check.

22. The Aristotelis Group, LLC is not recognized on the FINRA website broker check.

23. American Private Equity Group, LLC is not recognized on the FINRA website broker check.

24. Christian Novay, counsel for Mr. Limbert, met with Defendant Williamson at his office in March of 2018 to discuss his relationship with Ms. Leoussi-Bourodimos in greater detail.

25. During this meeting, Defendant Williamson was evasive and unresponsive. He repeatedly represented that there was no documentation codifying any relationship between himself and Ms. Leoussi-Bourodimos, notwithstanding the fact that Mr. Limbert had already tendered, among other things, the Subscription Agreement.

26. Defendant Williams further represented that any contracts between himself and Ms. Leoussi-Bourodimos were oral.

27. Immediately after this meeting, Defendant Williamson flew to Greece and attempted to convince Ms. Leoussi-Bourodimos to invest additional funds with him. She declined and demanded that Defendant Williamson remit the $500,000.00, which he refused.

28. In August of 2018, Defendant Williamson attempted to contact Mr. Limbert directly, but Mr. Limbert did not take the call.

## COUNT I
### (Fraudulent Misrepresentation - Matthew Williamson)

29. Plaintiff repeats and realleges Paragraphs 1 to 28 with the same force and effect as though fully set forth herein.

30. The Subscription Agreement represented unequivocally that "[CSAP] is existing and in good standing under the laws of the state of its organization." **Ex. A** at ¶ 5(a).

31. The Subscription Agreement further represented unequivocally that Ms. Leoussi-Bourodimos was entitled to a "percentage interest" in CSAP to "be determined…five (5) business days prior to the closing of" the Property. **Ex. A** at ¶ 1.

32. These representations were false when made.

33. Defendant Williamson, as Principal of and on behalf of Defendant Aristotelis, and as Principal of and on behalf of Defendant APEG, made these representations knowing that they were false and failed to disclose the falsity of said representations.

34. Defendant Williamson knew that Ms. Leoussi-Bourodimos would rely on his representations in deciding whether to tender the $500,000.00 membership interest.

35. Ms. Leoussi-Bourodimos justifiably relied on Defendant Williamson's affirmative representations as documented in the Subscription Agreement

36. Had Ms. Leoussi-Bourodimos known that CSAP does not exist and that the property acquisition project was a sham, she would not have entered into the Subscription Agreement.

37. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered damages of $500,000.00 plus the promised and expected percentage interest in the nonexistent CSAP.

## COUNT II
**(Conspiracy to Defraud - Matthew Williamson)**

38. Plaintiff repeats and realleges Paragraphs 1 to 37 with the same force and effect as though fully set forth herein.

39. Defendant Williamson, Partner at Aristotelis/Senior Principal of APEG, using the alias Stamatios Sevaslidis and acting within the scope of his employment, entered into agreement

and, upon information and belief, conspired with other Aristotelis and APEG employees for the common purpose of defrauding potential investors, including Ms. Leoussi-Bourodimos.

40. Defendant Williamson worked in concert with other Aristotelis and APEG employees and others to, among other things, conceal from Ms. Leoussi-Bourodimos that CSAP and the property acquisition project are nonexistent.

41. Defendant Williamson and others actively participated in and benefited from the fraudulent scheme.

42. Defendant Williams entered into the conspiracy with other Aristotelis and APEG employees and others and acted in furtherance thereof for the purpose of injuring the financial interest of potential investors, including Ms. Leoussi-Bourodimos, by means of fraud.

43. Ms. Leoussi-Bourodimos – and, by extension, Plaintiff – had no knowledge of the falsity of the foregoing representations and omissions and justifiably and reasonably relied on them to their detriment.

44. As a direct and proximate result of the conspiracy, Plaintiff has been damaged in the sum of $500,000.00 plus the promised and expected percentage interest in the nonexistent CSAP.

## COUNT III
**(Breach of Contract - Matthew Williamson)**

45. Plaintiff repeats and realleges Paragraphs 1 to 44 with the same force and effect as though fully set forth herein.

46. At all relevant times there existed a valid and enforceable contract between Ms. Leoussi-Bourodimos and Defendant Williamson: the Subscription Agreement.

47. Ms. Leoussi-Bourodimos performed all of her obligations under the Subscription Agreement, to wit: tendering $500,000.00 and executing the Subscription Agreement on February 20, 2013.

48. Defendant Williamson, on behalf of Defendant Aristotelis, breached the contract by failing to provide a percentage interest in CSAP.

49. As a direct and proximate result of this breach, Ms. Leoussi-Bourodimos suffered damages in the amount of $500,000.00 plus the promised and expected percentage interest in the nonexistent CSAP.

## COUNT IV
### (Conversion - Matthew Williamson)

50. Plaintiff repeats and realleges Paragraphs 1 to 49 with the same force and effect as though fully set forth herein.

51. Ms. Leoussi-Bourodimos was and is entitled to the percentage interest in CSAP and acquired full and exclusive property rights to it upon execution of the Subscription Agreement and $500,000.00 payment.

52. Defendants did not provide a percentage interest and unlawfully acquired the original $500,000.00 payment, thereby unlawfully retaining, controlling, and possessing Ms. Leoussi-Bourodimos's property.

53. In so retaining, controlling, and possessing Ms. Leoussi-Bourodimos's property, they deprived her of its possession and use.

54. As a direct and proximate result of Defendants' conversion, Ms. Leoussi-Bourodimos has been harmed because she was deprived of compensation to which she is entitled.

## COUNT V
**(RICO § 1962(c) - Matthew Williamson)**

55. Plaintiff repeats and realleges Paragraphs 1 to 54 with the same force and effect as though fully set forth herein.

56. Defendant Aristotelis is an enterprise engaged in and whose activities affect interstate commerce. Defendant Williamson is employed by or associated with the enterprise.

57. Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Ms. Leoussi-Bourodimos. Specifically, Defendant Williamson, on behalf of Defendant Aristotelis, induced Ms. Leoussi-Bourodimos to tender $500,000.00 in support of a fictitious property acquisition project. Defendant Williamson continues to participate in a pattern of racketeering activity, including by attempting to solicit additional investments funds.

58. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5)

59. Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

## COUNT VI
**(Fraudulent Misrepresentation - Aristotelis Under *Respondeat Superior*)**

60. Plaintiff repeats and realleges Paragraphs 1 to 59 with the same force and effect as though fully set forth herein.

61. The Subscription Agreement represented unequivocally that "[CSAP] is existing and in good standing under the laws of the state of its organization." **Ex. A** at ¶ 5(a).

62. The Subscription Agreement further represented unequivocally that Ms. Leoussi-Bourodimos was entitled to a "percentage interest" in CSAP to "be determined…five (5) business days prior to the closing of" the Property. **Ex. A** at ¶ 1.

63. These representations were false when made.

64. Defendant Williamson, as Principal of and on behalf of Defendant Aristotelis, and acting within the scope of his employment, made these representations knowing that they were false and failed to disclose the falsity of said representations.

65. Defendant Williamson knew that Ms. Leoussi-Bourodimos would rely on his representations in deciding whether to tender the $500,000.00 membership interest.

66. Ms. Leoussi-Bourodimos justifiably relied on Defendant Williamson's affirmative representations as documented in the Subscription Agreement

67. Had Ms. Leoussi-Bourodimos known that CSAP does not exist and that the property acquisition project was a sham, she would not have entered into the Subscription Agreement.

68. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered damages of $500,000.00 plus the promised and expected percentage interest in the nonexistent CSAP.

## COUNT VII
**(Conspiracy to Defraud - Aristotelis Under *Respondeat Superior*)**

69. Plaintiff repeats and realleges Paragraphs 1 to 68 with the same force and effect as though fully set forth herein.

70. Defendant Williamson, Partner at Aristotelis and using the alias Stamatios Sevaslidis and acting within the scope of his employment, entered into agreement and, upon

information and belief, conspired with other Aristotelis employees for the common purpose of defrauding potential investors, including Ms. Leoussi-Bourodimos.

71. Defendant Williamson worked in concert with other Aristotelis employees and others to, among other things, conceal from Ms. Leoussi-Bourodimos that CSAP and the property acquisition project are nonexistent.

72. Defendant Williamson and others actively participated in and benefited from the fraudulent scheme.

73. Defendant Williams entered into the conspiracy with other Aristotelis employees and others and acted in furtherance thereof for the purpose of injuring the financial interest of potential investors, including Ms. Leoussi-Bourodimos, by means of fraud.

74. Ms. Leoussi-Bourodimos – and, by extension, Plaintiff – had no knowledge of the falsity of the foregoing representations and omissions and justifiably and reasonably relied on them to their detriment.

75. As a direct and proximate result of the conspiracy, Plaintiff has been damaged in the sum of $500,000.00 plus the promised and expected percentage interest in the nonexistent CSAP.

## COUNT VIII
**(Breach of Contract - Aristotelis Under *Respondeat Superior*)**

76. Plaintiff repeats and realleges Paragraphs 1 to 75 with the same force and effect as though fully set forth herein.

77. At all relevant times there existed a valid and enforceable contract between Ms. Leoussi-Bourodimos and Defendant Williamson: the Subscription Agreement.

78. Ms. Leoussi-Bourodimos performed all of her obligations under the Subscription Agreement, to wit: tendering $500,000.00 and executing the Subscription Agreement on February 20, 2013.

79. Defendant Williamson, on behalf of Defendant Aristotelis, and acting within the scope of his employment, breached the contract by failing to provide a percentage interest in CSAP.

80. As a direct and proximate result of this breach, Ms. Leoussi-Bourodimos suffered damages in the amount of $500,000.00 plus the promised and expected percentage interest in the nonexistent CSAP.

## COUNT IX
### (Conversion - Aristotelis Under *Respondeat Superior*)

81. Plaintiff repeats and realleges Paragraphs 1 to 80 with the same force and effect as though fully set forth herein.

82. Ms. Leoussi-Bourodimos was and is entitled to the percentage interest in CSAP and acquired full and exclusive property rights to it upon execution of the Subscription Agreement and $500,000.00 payment.

83. Defendants did not provide a percentage interest and unlawfully acquired the original $500,000.00 payment, thereby unlawfully retaining, controlling, and possessing Ms. Leoussi-Bourodimos's property.

84. In so retaining, controlling, and possessing Ms. Leoussi-Bourodimos's property, they deprived her of its possession and use.

85. As a direct and proximate result of Defendants' conversion, Ms. Leoussi-Bourodimos has been harmed because she was deprived of compensation to which she is entitled.

## COUNT X
### (RICO § 1962(c) - Aristotelis Under *Respondeat Superior*)

86. Plaintiff repeats and realleges Paragraphs 1 to 85 with the same force and effect as though fully set forth herein.

87. Defendant Aristotelis is an enterprise engaged in and whose activities affect interstate commerce. Defendant Williamson is employed by or associated with the enterprise.

88. Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Ms. Leoussi-Bourodimos. Specifically, Defendant Williamson, on behalf of Defendant Aristotelis, induced Ms. Leoussi-Bourodimos to tender $500,000.00 in support of a fictitious property acquisition project. Defendant Williamson continues to participate in a pattern of racketeering activity, including by attempting to solicit additional investments funds.

89. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5)

90. Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

## COUNT XI
### (Fraudulent Misrepresentation - APEG Under *Respondeat Superior*)

91. Plaintiff repeats and realleges Paragraphs 1 to 90 with the same force and effect as though fully set forth herein.

92. The Subscription Agreement represented unequivocally that "[CSAP] is existing and in good standing under the laws of the state of its organization." **Ex. A** at ¶ 5(a).

93. The Subscription Agreement further represented unequivocally that Ms. Leoussi-Bourodimos was entitled to a "percentage interest" in CSAP to "be determined…five (5) business days prior to the closing of" the Property. **Ex. A** at ¶ 1.

94. These representations were false when made.

95. Defendant Williamson, as Principal of and on behalf of Defendant APEG, and acting within the scope of his employment, made these representations knowing that they were false and failed to disclose the falsity of said representations.

96. Defendant Williamson knew that Ms. Leoussi-Bourodimos would rely on his representations in deciding whether to tender the $500,000.00 membership interest.

97. Ms. Leoussi-Bourodimos justifiably relied on Defendant Williamson's affirmative representations as documented in the Subscription Agreement

98. Had Ms. Leoussi-Bourodimos known that CSAP does not exist and that the property acquisition project was a sham, she would not have entered into the Subscription Agreement.

99. As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff suffered damages of $500,000.00 plus the promised and expected percentage interest in the nonexistent CSAP.

## COUNT XII
**(Conspiracy to Defraud - APEG Under *Respondeat Superior*)**

100. Plaintiff repeats and realleges Paragraphs 1 to 99 with the same force and effect as though fully set forth herein.

101. Defendant Williamson, Senior Principal at APEG and acting within the scope of his employment, entered into agreement and, upon information and belief, conspired with other

APEG employees for the common purpose of defrauding potential investors, including Ms. Leoussi-Bourodimos.

102. Defendant Williamson worked in concert with other APEG employees and others to, among other things, conceal from Ms. Leoussi-Bourodimos that CSAP and the property acquisition project are nonexistent.

103. Defendant Williamson and others actively participated in and benefited from the fraudulent scheme.

104. Defendant Williams entered into the conspiracy with other APEG employees and others and acted in furtherance thereof for the purpose of injuring the financial interest of potential investors, including Ms. Leoussi-Bourodimos, by means of fraud.

105. Ms. Leoussi-Bourodimos – and, by extension, Plaintiff – had no knowledge of the falsity of the foregoing representations and omissions and justifiably and reasonably relied on them to their detriment.

106. As a direct and proximate result of the conspiracy, Plaintiff has been damaged in the sum of $500,000.00 plus the promised and expected percentage interest in the nonexistent CSAP.

**COUNT XIII**
**(Breach of Contract - APEG Under *Respondeat Superior*)**

107. Plaintiff repeats and realleges Paragraphs 1 to 106 with the same force and effect as though fully set forth herein.

108. At all relevant times there existed a valid and enforceable contract between Ms. Leoussi-Bourodimos and Defendant Williamson: the Subscription Agreement.

109. Ms. Leoussi-Bourodimos performed all of her obligations under the Subscription Agreement, to wit: tendering $500,000.00 and executing the Subscription Agreement on February 20, 2013.

110. Defendant Williamson, on behalf of Defendant APEG, and acting within the scope of his employment, breached the contract by failing to provide a percentage interest in CSAP.

111. As a direct and proximate result of this breach, Ms. Leoussi-Bourodimos suffered damages in the amount of $500,000.00 plus the promised and expected percentage interest in the nonexistent CSAP.

## COUNT XIV
### (Conversion - APEG Under *Respondeat Superior*)

112. Plaintiff repeats and realleges Paragraphs 1 to 111 with the same force and effect as though fully set forth herein.

113. Ms. Leoussi-Bourodimos was and is entitled to the percentage interest in CSAP and acquired full and exclusive property rights to it upon execution of the Subscription Agreement and $500,000.00 payment.

114. Defendants did not provide a percentage interest and unlawfully acquired the original $500,000.00 payment, thereby unlawfully retaining, controlling, and possessing Ms. Leoussi-Bourodimos's property.

115. In so retaining, controlling, and possessing Ms. Leoussi-Bourodimos's property, they deprived her of its possession and use.

116. As a direct and proximate result of Defendants' conversion, Ms. Leoussi-Bourodimos has been harmed because she was deprived of compensation to which she is entitled.

**COUNT XV**
**(RICO § 1962(c) - APEG Under *Respondeat Superior*)**

117. Plaintiff repeats and realleges Paragraphs 1 to 116 with the same force and effect as though fully set forth herein.

118. Defendant APEG is an enterprise engaged in and whose activities affect interstate commerce. Defendant Williamson is employed by or associated with the enterprise.

119. Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Ms. Leoussi-Bourodimos. Specifically, Defendant Williamson, on behalf of Defendant Aristotelis, induced Ms. Leoussi-Bourodimos to tender $500,000.00 in support of a fictitious property acquisition project. Defendant Williamson continues to participate in a pattern of racketeering activity, including by attempting to solicit additional investments funds.

120. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5)

121. Defendants have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

WHEREFORE, Plaintiff, GEORGE LIMBERT, as sole trustee of THE KALLIOPI LEOUSSI-BOURODIMOS OHIO LEGACY TRUST, respectfully prays for an Order:

(a) Entering judgment in favor of Plaintiff and against each of Defendants;

(b) Awarding Plaintiff compensatory damages commensurate with the value of the lost funds and expected percentage interest;

(c) Awarding Plaintiff punitive and exemplary damages for the intentional harm inflicted on Plaintiff by each Defendant;

(d) Awarding Plaintiff the value of its reasonable attorneys' fees and costs; and

(e) Awarding Plaintiff all such further and other relief as this Honorable Court deems just.

          Respectfully submitted,

          **LEWIS BRISBOIS BISGAARD & SMITH LLP**

          By: */s/ Daniel K. Cetina*
               One of Its Attorneys

Christian T. Novay (ARDC No. 6284318)
Christian.Novay@lewisbrisbois.com
Daniel K. Cetina (ARDC No. 6320423)
Daniel.Cetina@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
550 West Adams Street, Suite 300
Chicago, Illinois 60661
P: 312.345.1718
F: 312.345.1778
*Attorney for Plaintiff*